*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES D. CHEYNE,

      Plaintiff-Appellant,

v

MILEENA BOLES and JALAL BOLES,

      Defendants-Appellees,

and

AUTO CLUB INSURANCE ASSOCIATION,

      Defendant.

UNPUBLISHED
May 14, 2019

No. 343495
Allegan Circuit Court
LC No. 16-056143-NI

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, James D. Cheyne, appeals as of right an order granting summary disposition to defendants-appellees (defendants), Mileena and Jalal Boles, under MCR 2.116(C)(10) (no genuine issue of material fact).[1] We reverse and remand for further proceedings.

This case arises out of a 2014 auto accident. Plaintiff was driving northbound on Dequindre Road in Sterling Heights, Michigan, when Mileena pulled on to Dequindre from a side street and entered the stream of traffic. Plaintiff braked and swerved but could not avoid hitting Mileena. After the accident, plaintiff was able to get out of his vehicle unassisted and declined medical assistance. The following day, plaintiff sought medical treatment for pain in his shoulder and foot. Three months later, plaintiff began seeing a chiropractor for neck and back pain that he claimed was related to the accident. This chiropractor referred plaintiff to a neurosurgeon, who treated plaintiff for "mainly aching pain on the left lower extremity and

---

[1] On September 18, 2017, plaintiff dismissed with prejudice his claims against defendant Auto Club Insurance Association. None of the issues on appeal relate to those dismissed claims.

numbness on the top of the foot" before discharging him. Plaintiff then began seeing a second chiropractor, Dr. Ronald House, in mid-2015 for back and neck pain, muscle spasms, and inflammation. Plaintiff summarized his injuries from the accident as an injury to his lower back, numbness in his legs due to nerve damage, diabetes, torn muscles, and arthritis in his spine.

Plaintiff filed a complaint alleging that he was entitled to noneconomic damages because he had suffered a serious impairment of a body function under the Michigan No-Fault Act, MCL 500.3101 *et seq*. At the close of discovery, defendants moved for summary disposition, arguing that there was no genuine issue of material fact that plaintiff failed to satisfy the threshold-injury issue. Following a hearing, the trial court granted defendants' motion and dismissed plaintiff's claims.

On appeal, plaintiff argues that the trial court erred because he had created at least a question of fact regarding the MCL 500.3135 threshold. We agree.

Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). Defendants moved for summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the standard for a motion under MCR 2.116(C)(10) as follows:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when the evidence "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

Under the no-fault act, recovery for noneconomic damages is limited to situations where a plaintiff can show that he suffered "death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). A "serious impairment of body function" is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). In *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010), our Supreme Court explained that "[o]n its face, the statutory language provides three prongs that are necessary to establish a 'serious impairment of a body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." "[T]here is no bright-line rule or checklist to follow in making that evaluation." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). The analysis is "inherently fact- and circumstance-specific" and "must be conducted on a case-by-case basis." *McCormick*, 487 Mich at 215.

Here, plaintiff complains that he suffers from back and neck pain from the accident that affects his general ability to live his normal life. Defendants do not appear to contest that plaintiff's impairment is objectively manifested—i.e., the first *McCormick* prong[2]—nor that his impairment affects an important body function—i.e., the second *McCormick* prong. Rather, defendants contend—and the trial court agreed—that plaintiff failed to establish that his injuries affect his general ability to live his normal life, i.e., the third *McCormick* prong.

This Court recently reiterated that "an impairment to an important body function affects a person's general ability to lead a normal life if it has 'an influence on some of the person's capacity to live in his or her normal manner of living.' " *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018), quoting *McCormick*, 487 Mich at 202. In order to determine that the impaired person's ability to lead his normal life has been affected, this Court compares his life before and after the injury. *Nelson v Dubose*, 291 Mich App 496, 499; 806 NW2d 333 (2011). A person's life need only be "*affected*, not destroyed." *McCormick*, 487 Mich at 202. Courts must consider "not only whether the impairment has led the person to completely cease a pre-incident activity or life element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. "[T]he statute only requires that some of the person's ability to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. The effect on the person's ability to live his or her normal life need not be permanent. *Id*. at 203.

At plaintiff's deposition, he testified that before the accident, he "bicycled a lot," and that after the accident he was "[n]ot really" able to bike anymore. Plaintiff also testified that before the accident, one of his hobbies was radio control (RC) cars, but after the accident he is unable to use them because if he flipped one of the RC cars "a thousand feet away, having to walk to go pick it up . . . cause[d] pain in [his] hips and in [his] lower back." Plaintiff further testified that before the accident, he enjoyed fishing, but after the accident, fishing "caused severe lower back pain." Plaintiff's testimony that he no longer has the ability to engage in the recreational hobbies

---

[2] Defendants briefly assert on appeal that plaintiff "misses the mark" with his objectively-manifested argument because "the proper inquiry is whether the *impairment* is objectively manifested, not whether the *injury* (or symptomatology) is objectively manifested." Defendants, however, do not explain how plaintiff failed to establish a question of fact as to the first *McCormick* prong. In *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018), this Court explained, "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." Plaintiff here presented evidence of a physical basis for his pain: plaintiff provided (1) medical records documenting muscle spasms, swelling, and subluxations in plaintiff's back that Dr. House testified could decrease range of motion and cause pain and (2) an x-ray taken by Dr. House that he testified showed that plaintiff had bulging discs, which Dr. House explained could cause pain in the spine and legs. Thus, plaintiff at least established a question of fact whether his impairment was objectively manifested.

that he engaged in before the accident is sufficient to create a question of fact whether his injuries affected his general ability to lead his normal life, i.e., the third *McCormick* prong. The trial court erred by ruling otherwise.

In arguing that summary disposition was proper, defendants point to evidence suggesting that plaintiff's life before the accident was sedentary and that he did not engage in the recreational activities that he testified to. While we agree with defendants that there is evidence that tends to cut against plaintiff's testimony, at the summary disposition stage courts must view the evidence in the light most favorable to plaintiff and generally avoid weighing the credibility of witnesses. And when viewing the evidence in the light most favorable to plaintiff and accepting plaintiff's testimony as true, plaintiff established a question of fact whether his injuries affected his general ability to lead his normal life.

Also on appeal, defendants contend that the evidence fails to create a question of fact whether plaintiff's "injuries were sustained as a result of an accident/injuries caused by another party" because there was no testimony or "records confirming injury as a result of the motor vehicle accident." Defendants raised the same causation argument in the trial court, and though the court did not address this part of defendants' argument, we find it necessary to do so because "the trial court's ruling could be affirmed on alternate grounds if defendants are correct." *Patrick*, 322 Mich App at 615-616.

"Proximate causation is a required element of a negligence claim." *Id*. at 616. Causation is generally reserved for the trier of fact unless there is no dispute of a material fact. *Id*. To establish proximate cause, plaintiff must prove that both a cause in fact and a legal cause exist. *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). Michigan courts often use the term "proximate cause" as " 'a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation.' " *Patrick*, 322 Mich App at 616, quoting *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017). In *Ray*, our Supreme Court explained that this broader characterization recognizes that "a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Ray*, 501 Mich at 63-64 (quotation marks and citation omitted).

To establish cause in fact, a plaintiff must "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Weymers*, 454 Mich at 647 (quotation marks and citation omitted). Causation cannot be established by mere speculation. *Patrick*, 322 Mich App at 617. A plaintiff's evidence of causation is sufficient to survive summary disposition if the evidence "establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Wilson v Alpena Co Rd Comm*, 263 Mich App 141, 150; 687 NW2d 380 (2004) (quotation marks and citation omitted).

Here, plaintiff argued at trial and now argues on appeal that the testimony of Dr. House established at least a question of fact whether the accident caused his injuries. In pertinent part, the following exchange took place during Dr. House's deposition:

*Q.* . . . Earlier counsel asked you whether you could state within a reasonable degree of medical certainty, after having looked at your records and an MRI prepared by someone else, whether or not [plaintiff] was injured in the 2014 accident.

When I had cross-examined you on that question, you indicated that it's quite possible that he could have been injured in between the motor vehicle accident and the date you saw him. So truly you cannot state within a degree of -- within a reasonable degree of medical certainty what was the cause of [plaintiff's] subluxations and back pain in his presentation to you?

[Objection omitted.]

*The Witness*: Looking at things objectively, if there was multiple areas of degeneration or arthritis in the low back, then I could say most likely it was not caused, you know, by -- you know, by an auto accident. But since there isn't multiple areas of degeneration, but he had soft tissue damage, then I could say there's a high possibility, you know, that the injuries were from the auto accident.

*Q.* Right, so it's possible?

*A.* Yes.

*Q.* But you can't say within any -- with a reasonable degree of medical certainty that it is?

*A.* With a reasonable degree of medical certainty, I can say it was or it could be.

Defendants contend that plaintiff "presented no evidence that the accident caused any impairments or aggravated any pre-existing conditions" because "Dr. House testified only that the accident *could've* caused [plaintiff's] alleged impairments." In our opinion, this characterization of Dr. House's testimony does not view the testimony in the light most favorable to plaintiff. While Dr. House testified that plaintiff's injuries "could be" from the accident, he also testified that "there's a high possibility . . . that the injuries were from the auto accident" and that he could say with a reasonable degree of medical certainty that plaintiff's injuries were caused by the accident. When viewing the evidence of the accident coupled with Dr. House's testimony, plaintiff's causation argument presents a logical sequence of cause and effect sufficient to survive summary disposition. See *Wilson*, 263 Mich App at 150.

In support of their argument that Dr. House's testimony does not establish a question of fact on causation, defendants point to evidence that cuts against Dr. House's testimony, such as the deposition of an independent medical examiner where he testified that the accident did not cause plaintiff's injuries, and Dr. House's testimony that he did not review some of plaintiff's prior medical records. This evidence, in our opinion, goes to the weight of Dr. House's testimony and does not negate that he testified that "there's a high possibility" that plaintiff's injuries were caused by the accident. When viewing the evidence in the light most favorable to plaintiff, we conclude that plaintiff established a question of fact whether the accident caused his injuries.

-5-

Reversed and remanded for further proceedings.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien